UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MICHAEL RODRIGUEZ,

                    Plaintiff,

            -against-

BRIAN FISCHER, as the Commissioner of the
Department of Correctional Services for the State of
New York, THE DEPARTMENT OF
CORRECTIONAL SERVICES; GEORGE B.
ALEXANDER, as Chairman of the New York State
Division of Parole; THE NEW YORK STATE
DIVISION OF PAROLE, and JOHN DOES 1-5 and
JOHN DOES 6-10,

                    Defendants.
-------------------------------------------------------------------X

**OPINION & ORDER**
**08-CV-4662 (SJF)(MLO)**

FEUERSTEIN, J.

On November 18, 2008, plaintiff Michael Rodriguez ("Plaintiff") initiated this action

against Brian Fischer, as the Commissioner of the Department of Correctional Services for the

State of New York ("Fischer"), the Department of Correctional Services ("DOCS"), George B.

Alexander, as Chairman of the New York State Division of Parole ("Alexander"), the New York

State Division of Parole ("Parole"), and several unknown employees and/or agents of DOCS and

the New York State Division of Parole designated as John Does 1-10 (and, collectively with

Fischer, DOCS, Alexander, and Parole, the "Defendants") asserting, *inter alia*, violations of 42

U.S.C. § 1983 ("Section 1983").[1] Defendants have moved to dismiss the Complaint pursuant to

---

[1] The Complaint names both Fischer and Alexander in their official capacities, but notes
that they are being sued both individually and in their official capacities. (Compl., at ¶¶ 9, 11).

Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendants' motion is granted.

I.   Background

A.   Factual Background

On May 1, 2000, Plaintiff was sentenced as a Second Felony Offender to a determinate prison term of three (3) years following a conviction of Attempted Burglary in the Second Degree in the Supreme Court, Kings County, New York. (Defendants' Memorandum ("Def. Mem."), at 1.) Plaintiff's sentence also included a mandatory term of post-release supervision ("PRS"), which was administratively imposed by DOCS, although not imposed by the sentencing court. (Def. Mem., at 2; Compl., at ¶ 18.) Plaintiff was subsequently confined by DOCS for violations of his PRS from October 2005 to August 2006, February 2007 to March 2007, July 2007 to December 2007, and February 2008 to August 2008. (Compl., at ¶¶ 16-41.) Plaintiff alleges that DOCS's administrative imposition of PRS on Plaintiff's sentence, and Plaintiff's arrests and imprisonment for violation of that PRS, violated his rights pursuant to the Fourth, Fifth, and Fourteenth Amendments to the Constitution.

B.   Legal History

In 1998, the New York legislature enacted Jenna's Law, which required the imposition of

2

PRS "as a mandatory follow-up period to a determinate sentence for violent felony offenders."

People ex rel. Joyner v. New York State Div. of Parole, 15 Misc. 3d 1133(A), 2007 WL

1345702, at * 1 (N.Y. Sup. Ct. 2007). See also N.Y. Penal L § 70.45 (1999) ("Each determinate

sentence also includes, as a part thereof, an additional period of post-release supervision."). For

several years after the enactment, "many, if not most, sentencing courts assumed . . . that a

separate pronouncement of PRS was not required," and a non-judicial court officer or DOCS

would routinely administratively impose a term of PRS to be effective upon the prisoner's release

from custody. People v. Rogers, 21 Misc. 3d 1131(A), 873 N.Y.S.2d 514, 2008 WL 4916304, at

*1-*2 (Sup. Ct. Oct. 28, 2008). See also State of New York v. Myers, 22 Misc. 3d 809, 811, 870

N.Y.S. 2d 757 (N.Y. Sup. Ct. 2007) (noting that DOCS has estimated that it administratively

imposed PRS on over ten thousand (10,000) defendants). New York appellate courts

consistently upheld the administrative imposition of PRS, even in the absence of a

pronouncement of PRS by the sentencing court. See Collins v. State, 887 N.Y.S.2d 400, 402-03

(App. Div. 2009); Rogers, 2008 WL 4916304, at *2.

On June 9, 2006, the Second Circuit Court of Appeals held that only "the judgment of a

court, as expressed through the sentence imposed by a judge, has the power to constrain a

person's liberty," and therefore, the administrative imposition of PRS by DOCS violated clearly

established federal law. Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006). On April 29, 2008,

the New York State Court of Appeals likewise struck down administratively imposed PRS,

finding that sentencing is a judicial function. See People v. Sparber, 10 N.Y. 3d 457, 470, 859

N.Y.S.2d 582, 889 N.E.2d 459 (2008) ("even in cases with mandatory PRS terms, the defendant

still has a statutory right to hear the court's pronouncement as to what the entire sentence

3

encompasses, directly from the court"); Garner v. New York State Dep't of Correctional Services, 10 N.Y. 3d 358, 362, 859 N.Y.S.2d 590, 889 N.E.2d 467 (2008) ("the sentencing judge-and only the sentencing judge-is authorized to pronounce the PRS component of a defendant's sentence"). On June 30, 2008, the New York legislature codified a re-sentencing scheme which set forth "the appropriate procedure for identifying and correcting the sentences of those individuals" subject to administratively imposed PRS. Nazario v. State, 24 Misc. 3d 443, 447, 884 N.Y.S. 2d 580, 2009 N.Y. Slip Op. 29130 (citing N.Y. Correction Law § 601-d).

Plaintiff was sentenced, and his PRS administratively imposed by DOCS, before the Second Circuit's decision in Earley. (See Def. Mem., at 1-2; Compl., at ¶ 18).

II.    Standard of Review on Motions to Dismiss

       A.    Motions Pursuant to Rule 12(b)(1)

Rule 12(b)(1) permits a defendant to raise the defense of lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a district court lacks statutory or constitutional authority to adjudicate a case, it is proper for it to dismiss a case pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. See Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. (citing Makarova, 201 F. 3d at 113; further citation omitted).

4

B.    Motions Pursuant to Rule 12(b)(6)

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007). See also Boykin v. KeyCorp, 521 F. 3d 202, 214 (2d Cir. 2008). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555, 127 S. Ct.1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, --- U .S. ----, 129 S. Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), *cert. denied*, 128 S. Ct. 2964, 171 L. Ed.2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F. 3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, ---U.S. ----, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

In determining a motion to dismiss, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F. 3d at 152-53.

III.    Analysis

A.    Statute of Limitations

Defendants contend that Plaintiff's action is barred by the statute of limitations. (Def. Mem., at 3.) As there is no federal statute of limitations for actions arising under Section 1983, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" Ormisten v. Nelson, 117 F. 3d 69, 71 (2d Cir. 1997) (quoting Owens v. Okure, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed.2d 594 (1989)). "The statute of limitations for a § 1983 action arising in New York is three years." Lynch v. Suffolk County Police Dep't Inc., No. 07-3684-cv, 2009 WL 3287565, at *2 (2d Cir. Oct. 14, 2009). However, the date of accrual of a plaintiff's cause of action is determined by federal law. See Ormisten, 117 F.3d at 71 (noting that "federal law governs the determination of the accrual date

6

(that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action"). Generally, a plaintiff's Section 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Rene v. Jablonski, No. 08-CV-3968, 2009 WL 2524865, at *5 (E.D.N.Y. Aug. 17, 2009).

In Santiago v. Fischer, No. 09-CV-1383, 2009 WL 3852001 (E.D.N.Y Nov. 18, 2009), and Scott v. Fischer, No. 07 Civ. 11303, 2009 WL 928195, at *4 (S.D.N.Y. Mar. 30, 2009), the courts held that the claims did not accrue on the date plaintiffs knew of their injuries, but that each plaintiff's claim accrued when his respective petition for a writ of habeas corpus was granted. Santiago, 2009 WL 3852001, at *3; Scott, 2009 WL 928195, at *4. Both courts relied upon the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed.2d 383 (1994), finding that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Heck, 512 U.S. at 489-90. See also Santiago, 2009 WL 3852001, at *3; Scott, 2009 WL 928195, at *4. Since Plaintiff never filed, and therefore was never granted, a petition for a writ of habeas corpus, it is necessary to determine whether Heck bars his Section 1983 claim.

In Heck, the Supreme Court held that :

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Heck, 512 U.S. at 486-87. See also Kogut v. County of Nassau, Nos. 06-CV-6695, 06-CV-6720, 2009 WL 5033937, at *5 (E.D.N.Y. Dec. 11, 2009) (specifying the four (4) methods by which a

conviction or sentence may be invalidated). As Plaintiff served his entire period of PRS, and the resulting confinement for violation of his PRS, his sentence was never invalidated. (See Compl., at ¶¶ 16-41.) Therefore, Heck would appear to bar Plaintiff's Section 1983 claim regarding his allegedly unconstitutional sentence. See Heck, 512 U.S. at 489-90.

Nevertheless, in Heck, the Supreme Court's "rationale was based, in part, on a desire to 'avoid[ ] parallel litigation over the issues of probable cause and guilt,' prevent 'the creation of two conflicting resolutions arising out of the same or identical transaction,' and preclude "'a convicted criminal defendant [from making a] . . . collateral attack on the conviction through the vehicle of a civil suit.'" Huang v. Johnson, 251 F. 3d 65, 71 (2d Cir. 2000) (quoting Heck, 512 U.S. at 484. As Plaintiff is no longer in the custody of DOCS, the time to invalidate his sentence by filing a petition for a writ of habeas corpus has passed, and there is no longer a concern of parallel litigation. See Finkelstein v. Spitzer, 455 F. 3d 131, 133 (2d Cir. 2006) ("Section 2254 allows a federal court to entertain a habeas corpus petition for relief from a state-court judgment 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'") (quoting 28 U.S.C. 2254). See also Huang, 251 F. 3d at 71 (holding that Heck does not bar a plaintiff's Section 1983 claim challenging her sentence after she has been released). Moreover, Plaintiff is not asserting that PRS should not have been imposed at all, but is seeking damages based upon the procedure by which PRS was imposed. Therefore, Heck does not bar his claim. See Spencer v. Kemna, 523 U.S. 1, 118 S. Ct. 978, 140 L. Ed.2d 43 (1998) (noting that if "petitioner were to seek damages 'for using the wrong procedures, not for reaching the wrong result,'. . . and if that procedural defect did not 'necessarily imply the invalidity of' the revocation, . . . then Heck would have no application

8

all") (quoting Heck, 512 U.S., at 482-83, 487).

As Heck is inapplicable, Plaintiff's claim accrued when Plaintiff had knowledge that his administratively imposed PRS violated his constitutional rights. See Rene, 2009 WL 2524865, at * 5. Defendants' contention that Plaintiff possessed this knowledge on April 11, 2003, when he was released to PRS, (see Def. Mem., at 4), is incorrect. In 2003, courts routinely upheld the administrative imposition of PRS, see supra § I.B., and as such, Plaintiff would not have been aware of the injury giving rise to his claim at that time. See, e.g., Scott, 2009 WL 928195, at *4 (S.D.N.Y. Mar. 30, 2009) (rejecting defendant's argument that plaintiff's Section 1983 action based upon her administratively imposed PRS accrued when plaintiff learned of her PRS in 2002). Plaintiff could not have been aware of his injury until April 29, 2008, when the New York Court of Appeals proscribed the practice of administratively imposing PRS. See Sparber, 10 N.Y.3d at 470; Garner, 10 N.Y. 3d at 362. As his Complaint was filed less than three (3) years later, it is not time-barred.[2] See Lynch, 2009 WL 3287565, at *2.


B.      Sovereign Immunity


The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by

---

[2] Even if Plaintiff should have known that the administrative imposition of his PRS violated his constitutional rights on June 9, 2006, when the Second Circuit decided Earley, his Complaint was nevertheless filed within the limitations period.

citizens or subjects of any foreign state." U.S. Const. amend. XI. A "suit against a state official in his or her official capacity . . . is no different from a suit against the State itself," and as such, suits for money damages against state officials in their official capacities are barred by the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). See also K & A Radiologic Technology Services, Inc. v. Commissioner of Dept. of Health of State of N.Y., 189 F. 3d 273 (2d Cir. 1999) ("States-and state officers, if sued in their official capacities for retrospective relief-are immunized by the Eleventh Amendment from suits brought by private citizens in federal court."); Huminski v. Corsones, 396 F. 3d 53, 70 (2d Cir. 2005) (noting that "state officials cannot be sued in their official capacities for retrospective relief under section 1983"). Likewise, "[a]n official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself." Posr v. Court Officer Shield # 207, 180 F. 3d 409, 414 (2d Cir. 1999). Plaintiff concedes that the claims against DOCS and Parole, as well as the claims against Fischer and Alexander in their official capacities should be dismissed. (See Plaintiff's Opposition ("Pl. Opp."), at 14.) Therefore, the prong of Defendants' motion seeking dismissal of the claims against DOCS, Parole, Fischer in his official capacity, and Alexander in his official capacity is granted.

C.     Qualified Immunity

Defendants contend that they are insulated from liability under the doctrine of qualified immunity. (Def. Mem. 5-20.) The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established

10

statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982)). To determine whether a right is clearly established, a court must assess whether: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Anderson v. Recore, 317 F. 3d 194, 197 (2d Cir. 2003) (internal citations omitted). See also McCullough v. Wyandanch Union Free School Dist., 187 F. 3d 272, 278 (2d Cir. 1999) (noting that in ascertaining whether a right is clearly established, the "question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct."). Additionally, the right in question "must be clearly established 'at the time of the conduct at issue.'" Santiago, 2009 WL 3852001, at *5 (quoting Davis v. Scherer, 468 U.S. 183, 197, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)).

Defendants' assertion that at the time DOCS imposed PRS upon Plaintiff, "it was not clearly established, and reasonable officials in the Defendants' positions would not have known, that the administrative imposition of PRS by DOCS was a violation of a constitutional right," (Def. Mem., at 6), is correct. Until the Second Circuit's decision in Earley in 2006, there was no clearly established constitutional right not to have PRS administratively imposed by DOCS in the absence of a pronouncement by the sentencing court. Rivers v. Fischer, No. 08 Civ. 8906, 2009 WL 3169966, at *3 (S.D.N.Y. Sept. 28, 2009) (holding that when a plaintiff's PRS was administratively imposed in 2003, it was not yet clearly established that administratively imposed

PRS was unconstitutional). Although Plaintiff argues that Defendants should have known that the administrative imposition of PRS was unconstitutional based upon the Supreme Court's decision in Hill v. United States ex rel. Wampler, 298 U.S. 460, 464, 56 S. Ct. 760, 80 L. Ed. 1283 (1936), holding that a clerk of the court could not constitutionally insert a provision into a sentence that was not pronounced by a judge at sentencing, three (3) District Courts have considered this exact argument and rejected it. See Rivers, 2009 WL 3169966, at *4 (citing Scott, 2009 WL 928198; Sinclair v. Goord, No. 09:07-CV-1317, 2009 U. S. Dist. Lexis 67901 (N.D.N.Y. Mar. 10, 2009)). Whereas the clerk in Wampler acted pursuant to unwritten instructions by the judge, the Defendants acted pursuant to a New York state statute requiring PRS as part of Plaintiff's sentence, and as such, they could not have understood Wampler as prohibiting the administrative imposition of PRS. See Wampler, 298 U.S. at 465 (noting that the instructions "were not published; they were not reduced to writing; they are lacking in the formal safeguards that protect against mistake and oppression"). See also Rivers, 2009 WL 3169966, at *4 (holding that defendants would not have understood Wampler as barring administratively imposed PRS). Therefore Defendants are entitled to qualified immunity for their roles in administratively imposing PRS on Plaintiff, whether at the time of his sentencing in 2000, or upon his release from confinement in 2003.

However, Plaintiff also alleges constitutional violations concerning the periods during which he was incarcerated for violating his administratively imposed PRS, the majority of which occurred after the Second Circuit decided Earley. (Pl. Opp., at 10; Compl., at ¶¶ 16-41.) During Plaintiff's periods of confinement in 2006, 2007, and 2008, "a court with the power to clearly establish a federal right had held that administratively imposed PRS violated due process."

12

Santiago, 2009 WL3852001, at *5. However, even if a right is clearly established, "an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." Id. Although the Second Circuit established in Earley that administratively imposed PRS is unconstitutional, some New York courts continued to uphold the practice until nearly two (2) years later. See supra § I.B. See also People ex rel. White v. Warden, Rikers Island Correctional Facility, 15 Misc. 3d 360, 365, 833 N.Y.S. 2d 363 (N.Y. Sup. Ct. 2007) (noting that since "Earley was decided, the First Department has consistently rejected constitutional challenges to periods of post-release supervision that were not announced by the court at the time of sentence"); Quinones v. State Dept. of Corrections, 14 Misc. 3d 390, 824 N.Y.S. 2d 877 (N.Y. Sup. Ct. 2006) (noting that "Earley, while it may be treated as useful and persuasive, is not binding" and finding that respondent's administrative imposition of PRS was not unlawful). Cf. Coleman v. New York State Dept. of Correctional Services, 19 Misc. 3d 1104(A), 859 N.Y.S. 2d 901 (N.Y. Sup. Ct. 2008) (following Earley and finding administratively imposed PRS to be improper). Since New York courts were in disagreement regarding the propriety of administratively imposed PRS at the time of Plaintiff's post-Earley arrests and confinements, and "absent contrary direction, state officials . . . are entitled to rely on a presumptively valid state statute," Defendants are entitled to qualified immunity, and therefore, Defendants' motion to dismiss is granted. See Vives v. City of New York, 405 F. 3d 115, 117 (2d Cir. 2005) (quoting Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 102-03 (2d Cir. 2003)).

IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of the Court is directed to close this case.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge


Dated: February 3, 2010
       Central Islip, New York